TERRELL, Justice
(dissenting).
The majority opinion reverses the judgment of the trial court on the theory (1) that deceased was a trespasser and (2) that there was a failure to show negligence on the part of defendants
I do not agree that the deceased was a trespasser on appellant’s track at the time he was killed. This imputation' is often made in cases like this. Any intelligent person must admit that the railroads have been one of the greatest factors in the development of this country. Few if any instrumentalities have contributed so much to our economy, culture, convenience, progress and welfare. We could not have accomplished what we have without them. It is a fact, however, that the people were here first and the railroads came with their leave or invitation and in many instances their coming was aided by the countries’ gratuities. When they came they frequently divided the premises of those along or across which they were constructed. On account of such divisions and the growth of communities adjacent to the railroads many thousands of property owners now live on one side of the track and make their living in whole or in part on the other side. Others live on one side of the track and get their mail and groceries, go to school and church, visit their friends, fish and bathe at the beach and carry on businesses of every . description on the other side. When we own land on both sides of the track or when business or convenience requires, we drive across the tracks with no thought of being a trespasser. To contend that one is a trespasser every time he crosses the tracks of a railroad company is a premise that I do not accept even when I take a “short cut” to my objective.
As to the question of failure to show negligence, this being the real question in the case, • I admit that it is a close question but that is ample reason to affirm the judgment. That this Court is without authority to nullify the-verdict of a jury when approved by the trial court unless clearly shown to have been induced by prejudice, undue influence, misapprehension of the facts, or when there is a complete lack of competent .evidence to- support it, is too academic to cite supporting authority.
The controverted evidence is that of G. W. Brown, an engineer of long experience, who testified that at the rate of speed the evidence showed that the train was running, it could have been brought to a stop in 70 feet without danger to passengers by proper application of the ■ emergency brakes. The train was passing the town of Sneads, Florida; and was traveling at a reduced speed. The. fireman first saw decedent when the train was about 100 feet from him and cautioned the engineer.
The majority opinion admits that the evidence is conflicting but then proceeds to rule out the evidence of the said engineer by a series of mathematical calculations, which it is contended renders it incredible and not worthy of belief. Juries may be as skillful with figures as judges, at any rate this Court is not authorized to invade the province of the jury and set its verdict aside on calculations made by it in the absence of those made by the jury showing the process by which it proceeded to reach its verdict. There is still another and better reason for this. The jury and the trial court were on the ground, they' know the nature of the locale, they saw and heard the witnesses depose, they had - a chance to measure the bias for or prejudice against either party to the cause, they measured the veracity and sincerity of the witnesses, they observed the quality and dependability of the evidence, the quantum of the evidence and reasonable deductions or inferences that may be drawn from it. These intangibles and others have their place in every trial and are often the decisive factor. Unfortunately, they cannot be transmitted to this Court but the jury and the trial court had the advantage. of them. Hence we say that the verdict of a jury approved by the trial .'court should not be overthrown unless error is clearly apparent.
*696 In this case the record is not clear as to what the deceased was doing on appellant’s tracks or why he was there at the time he was killed. It was certainly an unusual place and time for him to be there. Whether he was crippled, deranged mentally or was abnormal in some other way we are left to speculate, neither do we know whether he was taking a “short cut” home or to some other place where he was bound on a. personal or some other mission. He was barely past public school age and there is no suggestion that he was plotting suicide. There is so much about this case that we are not advised of that may have been obvious to the jury and the trial court and may have been the primary incentive that produced the judgment. ■ For 'this .Court to sit many miles .from the locus with no knowledge whatever of the intangibles and pit its judgment against that of the jury and the trial court with nothing to base it on but some abstract calculations seems to me to be a clear invasion of the jury’s province. •
I therefore dissent.
SANDLER, Associate Justice, concurs.